242 So.2d 818

**STATE of Louisiana**

v.

**Henry MONTGOMERY.**

No. 50316.

Nov. 9, 1970.

Rehearing Denied Dec. 14, 1970.

Johnnie A. Jones, Murphy W. Bell, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.

HAMITER, Chief Justice.

On November 18, 1963 Henry Montgomery was indicted for murder. He was tried, convicted and sentenced to death. On January 17, 1966 this court, on an appeal by the accused, reversed the conviction and sentence, and it ordered a new trial. 248 La. 713, 181 So.2d 756.

On October 8, 1966 (after the new trial was granted) the defendant, along with other inmates, escaped from the parish jail. (There is some disagreement between the state and the defendant as to the length of

time the latter was at large. However, it is clear that he did leave the prison compound, and the rearresting officer's testimony was that he was apprehended about two hours after the break out. His testimony was corroborated by that of another officer who participated in the search and the rearrest of the escapees. The defendant offered no counteravailing evidence.)

A new trial was commenced on February 6, 1969, at the conclusion of which the jury returned a verdict of guilty without capital punishment; and the defendant was given a life sentence in the state penitentiary.

On this appeal from such conviction and sentence he relies on one bill of exceptions, it having been reserved to the court's overruling of his motion to quash the indictment based on a plea of prescription.

In order to determine whether prescription has tolled in the instant prosecution we must examine the appropriate, hereinafter quoted, articles of the Louisiana Code of Criminal Procedure.

Article 578, insofar as it is pertinent here, states: *"Except as otherwise provided in this Chapter*, no trial shall be commenced:

"(1) In capital cases after three years from the date of institution of the prosecution;". (*Italics* ours)

One clear exception to that rule is contained in Article 579 which provides: "The period of limitation established by Article 578 shall be interrupted if:

"(1) The defendant at any time, with the purpose to avoid detection, apprehension, or prosecution, flees from the state, is outside the state, *or is absent from his usual place of abode within the state*; or

"(2) The defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the state.

"The periods of limitation established by Article 578 shall commence to run anew from the date the cause of interruption no longer exists."

Also, Article 582 recites: "When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, *or within the period established by Article 578, whichever is longer."* (*Italics* ours)

The defendant contends that Article 582, when read in connection with Article 579 (2), is controlling. He observes that it is conceded that his escape, because of its short duration, did not prevent or delay the state's bringing him to trial. And he argues that the three year prescription provided by the Article 578 was, therefore, not interrupted and has expired (as has its extended one year period beyond the date of the ordering of the new trial), with the result that he is now immune from prosecution on the original charge.

In our opinion the contention is without merit. The effect of the actions of the defendant, as urged by the state, is not governed by Article 579(2), but rather by the provisions of Article 579(1) which unequivocally provide for the effect of the circumstance *of an accused absenting himself from his usual place of abode with the intent to avoid detection, apprehension or (as in this case) prosecution*—in other words when, as here, the defendant has absconded and become a fugitive.

The language of the present Article 579 (1) specifically states that when an accused flees the state, is outside the state, or *is absent from his usual place of abode within the state for the purpose of avoiding detection, etc.* such act will *interrupt* prescription. Nothing else is required. That is, such act need not necessarily result in delay or prevention of trial in order for the interruption to occur.

Other circumstances may take place, however, which are beyond the control of the state, but which are not necessarily intentional acts on the part of the accused to avoid prosecution but which nevertheless, prevent or delay trial (such as insanity or when the accused is incarcerated in another jurisdiction wherein the processes of Louisiana will not be honored. They are dealt with in Article 579(2). Clearly, defendant's conduct did not fall within this category.

We conclude, therefore, that it matters not how long the conduct specified in Article 579(1) persists, or whether it has any effect on the progress of the trial. *The simple fact of its occurrence results in, at that time, an interruption.* (The length of time such conduct endures will, of course, be taken into account in determining when the prescription commences to run anew.)

Although not presented to the court by this accused, we have also considered the question of whether his escape *constituted an absence from his "usual place of abode" and whether it was with the intent to avoid prosecution,* and have concluded that it did. The circumstances of the escape—the overpowering of one of the guards, the threatening of the personal safety of another officer in order to effect escape, and the attempt thereafter to avoid detection—*all clearly indicate an intention to leave for the purpose of avoiding prosecution.*

The jail house in which the accused had been incarcerated for a number of years was his *"usual place of abode",* as aforestated, within the language of the statute (Article 579(1)). To hold otherwise would be for us to charge the Legislature with the manifest inconsistency of providing an interruption of prescription when an accused flees or absconds or hides out *from his home,* but *not resulting* in an interruption when he does the same thing by escaping from prison.

Moreover, in our opinion the use of the general term "usual place of abode", instead of other specific terms having more definite connotations such as "home", "residence", or "domicile" indicate an intent to include any place of habitation where the accused was then staying, and where the state might expect to find him for service of process; and that it *did* include the parish jail under the circumstances of which this defendant was then living.

During oral argument it was suggested by a member of this court that, inasmuch as when the new trial was granted there was less than a year to run on the three year prescription, the state was bound by a one year prescriptive period provided in Article 582. We do not agree with this analysis of such codal article. As we view the provisions contained in Chapter 2, Title 17, they provide but *one prescription*, that being *the one set out in Article 578 which in this case is three years, it being a prosecution. for a capital offense.* Article 579 sets forth the causes for interruption of that prescription. When one of those causes occurs within the prescriptive period it matters not whether it takes place before the trial, during the trial, while the case is pending on appeal or, as in this case, after a new trial has been ordered on an appeal following a conviction. The escape herein occurred within that prescriptive period. Consequently, the state had three years from the date of the escape and the recap-

ture within which to try the defendant. See Articles 578 and 579(1).

The provisions of Article 582 in no manner affect such operations of Articles 578 and 579. The purpose and effect of that Article (582) is merely to give to the state *at least* one year within which to try an accused when a new trial has been granted (or mistrial ordered). In such case it merely *extends the original prescriptive period* for whatever time is necessary to reach this result. We do not view it as a separate and different prescriptive period of any definite length. Rather, as we have said, it merely extends the original period under the stated circumstances. Consequently, *when the escape involved herein occurred it interrupted the original three year prescriptive period.*

We are fortified in this conclusion by the fact that Article 579 speaks of the interruption of *only one* prescription—that prescribed by Article 578. And it is inconceivable that the Legislature would have provided for an interruption of it because of the accused's absconding (and other perfectly valid reasons for interrupting), yet at the same time set up another and superceding prescription with no provision for interruption thereof for any cause.

For the reasons assigned the conviction and sentence are affirmed.

McCALEB, SUMMERS and TATE, JJ., concur in result.

BARHAM, Justice (dissenting).

On November 18, 1963, the defendant was indicted for murder. Over two years afterwards, on January 17, 1966, we reversed his conviction and ordered a new trial. The new trial was begun more than three years later, on February 6, 1969.

Statutes of limitation for the trial of criminal offenses are for the protection of those charged with crimes. They are positive and strict requirements of the maximum time afforded the State for commencement of trial after prosecution is instituted, and they should be construed in this light. Here the State waited almost six years after the occurrence of the offense, and more than three years after our remand and order for new trial, before bringing this defendant to trial. Not only does such a delay appear inexcusable; it is in my view forbidden by positive statutory law.

Louisiana Code of Crimial Procedure, Article 582 provides:

"When a defendant obtains a new trial or there is a mistrial, the state must commence the second trial within one year from the date the new trial is granted, or the mistrial is ordered, or within the period established by Article 578, whichever is longer."

Article 578 provides that trial in capital cases must commence within three years from the date of institution of prosecution. Thus under the requirements of Article 582

one year is the period of limitation for *retrial unless* at the time of the order for new trial the remaining time of the original period of limitation exceeds the one year. Obviously the time limitation for new trials should not, and the Legislature has provided that it does not, deprive the State of the original limitation period if that period would provide a longer delay than the one year. The determination of the period of limitation for the retrial of this defendant was established at the moment the order for new trial became final. At that time, the one year from order of new trial provided the longer period of limitation since only approximately nine months remained of the three-year limitation. Since the period of limitation was established when our judgment for new trial was entered, an occurrence (escape) thereafter could not change the period of limitation; it could only interrupt the period which had attached.

Having concluded that the statute of limitation here established a one-year deadline for new trial, I need not concern myself with the question of whether there was interruption of that period of limitation, for the year has tolled regardless of the alleged interruption. For these reasons I respectfully dissent.

Rehearing denied.

SUMMERS, J., concurs.

BARHAM, J., dissents from the refusal of a rehearing.