COVINGTON, Judge.
Title Research Corporation and Karl F. Heeter, plaintiffs, petitioned for a writ of mandamus against Lucy Reid Rausch, Clerk of Court, St. Tammany Parish, Louisiana, directing her to permit the petitioners to photograph the mortgage and conveyance records and all other public records of which she is the official custodian, and directing her to extend to petitioners all reasonable comfort and facility for the full exercise of the rights allegedly granted to petitioners under the Public Records statute. The trial court denied the relief sought by way of mandamus and dismissed the plaintiffs’ suit. The plaintiffs have appealed. On this appeal, the Louisiana Clerks of Court Association appears, by leave of court, as amicus curiae, in support of the St. Tammany Parish Clerk of Court and in opposition to the claims and contentions of the plaintiffs-appellants.
The facts were stipulated. Title Research Corporation is a domestic corporation whose primary purpose is to research titles to immovable property on behalf of its customers to whom it furnishes abstracts of title for a price. Karl F. Heeter is a person of legal age and a resident of St. Tammany Parish, who also happens to be president of Title Research Corporation. Basically, what plaintiffs seek to accomplish through this mandamus proceeding is the right to install a microfilm camera in the public records vault of the Clerk of Court’s office and to use that equipment for the purpose of taking microphotographs of unbound original mortgage and conveyance documents, together with any attachments, while such documents are being processed by the Clerk’s office. In other words, they seek to force the Clerk of Court to provide them access to the mortgage and conveyance records of St. Tammany Parish for copying in furtherance of their business enterprise. In reliance upon La. Const, of 1974, Art. 12, Sec. 3, LSA-C.C.P. art. 251 and LSA-R.S. 44:31 et seq., plaintiffs want to microfilm every document filed in the mortgage and conveyance records prior to the permanent binding thereof.
For several months such copying was done by Title Research under an agreement with the Clerk’s office. Essentially, the copying was done after office hours by Title Research, under the supervision of a deputy clerk. The Clerk of Court ultimately concluded that she was not required under the Public Records statute to continue to permit such copying and that such copying was detrimental to the integrity of the public records, so she declined to allow plaintiffs to continue with the microfilming.
After the trial, the district court upheld the Clerk’s discontinuance of the plaintiffs’ microfilming operation and denied the mandamus sought by the plaintiffs.
In reaching its conclusion, the trial court said:
When the work, duty or functions of a public agency is a matter of concern to a citizen, there must be a liberal interpretation of the Public Records Law to extend access to the public records.
The work, duty or function of a public agency is not at issue in this case. The plaintiffs have no desire to examine any *1107 thing. They seek to reproduce all acts in the conveyance and mortgage records of St. Tammany Parish as part and parcel of a commercial enterprise. In essence, the plaintiff corporation seeks to duplicate the office of the Clerk of Court insofar as land records are concerned, and sell reproductions of these records to persons interested in the chains of land titles. It is clear that the Legislature did not contemplate or intend such a commercial enterprise in passing the Public Records Law.
Such a commercial enterprise as that of plaintiffs places an added and undue burden on the Clerk of Court. At least one record has been damaged by plaintiffs’ operation, and numerous documents have been malarranged in plaintiffs’ copying process. Plaintiffs’ copying operation takes additional space from an already overcrowded clerk’s office. Satisfying plaintiffs’ desire to copy the originals before binding may delay and unduly inconvenience the binding contractor as well as the Clerk of Court.
In summary, a citizen has the right to examine and reproduce public records. This right, as well as all other rights, must be exercised in a reasonable and sensible manner. The right to examine and reproduce a land title or mortgage does not extend to reproducing all land titles and mortgages. The right to examine and reproduce does not extend to duplicating the land records portion of the office of the Clerk of Court. The right to inspect and copy public records was not intended to guarantee the economic profitability of a copying commercial enterprise. The Court therefore concludes that the Clerk of Court properly stopped and prohibited plaintiffs’ microfilming operation in her office, and judgments in accordance with these Reasons will be signed when submitted. (Emphasis by the trial court).
In the instant case plaintiffs do not claim that they have been denied the right to inspect or examine any public record; there is also no claim that they have been refused copies of any records. In fact, it was stipulated that any company or individual is allowed to review and obtain copies of unbound records, under the supervision of the Clerk of Court or a member of her staff. In addition, it was stipulated that the Clerk of Court' offered machine copies of all of the specific original instruments requested by Title Research, but that the plaintiffs refused to accept the tender on the grounds that such machine copies did not meet their requirements.
Section 3 of Article 12 of the Louisiana Constitution of 1974 reads as follows:
No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law. (Emphasis added.)
The language of the quoted Section clearly indicates the right to photograph or microfilm public records is not intended to be constitutionally mandated or protected. It is only the examination of public documents which is protected. It is not suggested that such right has been denied in this instance. No constitutionally protected rights of the plaintiffs have been violated.
ARTICLE 251 OF THE LOUISIANA CODE OF CIVIL PROCEDURE
Appellants rely heavily upon the Article 251 of the Louisiana Code of Civil Procedure, which states as follows:
The clerk of a court is the legal custodian of all of its records, and is responsible for their safekeeping and preservation. He may issue a copy of any of these records, certified by him under the seal of the court to be a correct copy of the original. Except as otherwise provided by law, he shall permit any person to examine, copy, photograph, or make a memorandum of any of these records at any time during which the clerk’s office is required by law to be open. (Emphasis added).
The trial judge concluded that the above Article did not support the plaintiffs’ demands, because the quoted Article relates solely to the examination and reproduction of documents pertaining to the operation of *1108 the court, such as filings in the suit records. The first sentence refers to the clerk as being the custodian of the court’s records. The Article is concerned throughout with the records of the court, not the records over which the clerk also has custody as parish recorder.
An analysis of the placement of Article 251 in the Louisiana Code of Civil Procedure readily reveals the inapplicability of the Article to the situation at hand. The Article is placed in Book I dealing with courts, actions and parties, Title I Courts and Chapter 5 — Clerks. There are no duties of the Clerk of Court in Chapter 5 regarding the maintenance of mortgage and conveyance records. On the contrary, Article 251 makes it clear that the “clerk of a court is the legal custodian of its records” i.e., the court records with which the Article deals when it provides for their safekeeping, preservation and copying.
It is, of course, correct that the various clerks of court (Orleans excepted) are by statute (LSA-R.S. 44:71), ex-officio parish recorders of conveyances, mortgages, and other acts; but their duties as “recorders” have been kept separate and distinct from those performed for the “court”. In Jones v. Dyer, 371 So.2d 1267 (La.App. 2nd Cir. 1979), the Court held that the filing of a judgment with the Clerk in open court was not “filed for registry in the office of the parish recorder” so as to operate as a judicial mortgage. In the course of the opinion the Court made the following pertinent observation:
. .. The filing of the judgment with the minute clerk in open court is not tantamount to filing the instrument in the office of the parish recorder. The clerk’s duties in the courtroom are within the scope of his authority as clerk of court but not within the scope of his duties as recorder of mortgages and conveyances. The two offices are distinct. (Footnote omitted.) Id., 371 So.2d at 1269.
For these reasons, we hold that the court below was correct in refusing to apply the provisions of Article 251 of the Louisiana Code of Civil Procedure to a situation which exclusively involves the duties, obligations and responsibilities of the Clerk of Court with respect to the conveyance and mortgage records.
In any event, it is of no consequence that LSA-C.C.P. art. 251 is inapplicable to this situation. There is nothing to suggest that this Article should receive a broader or narrower construction than the Public Records statute. The Official Revision Comments indicate that the rights under LSA-C.C.P. art. 251 are in accord with the principles of the Public Records statute.
THE PUBLIC RECORDS STATUTE
Appellants rely primarily upon the provisions of LSA-R.S. 44:31, which presently reads as follows:
Except as otherwise provided in this Chapter or as otherwise specifically provided by law, and in accordance with the provisions of this Chapter any person of the age of majority may inspect, copy or reproduce or obtain a reproduction of any public record. (Emphasis added).
It is pertinent to note that in 1940, when Section 31 was originally enacted, it accorded the “right to examine, copy, photograph, and take memoranda of any and all public records . . . ”. Pursuant to Act 686 of 1978, the Section was amended to delete the right to “photograph” and substituted the right to “reproduce or obtain a reproduction of any public record.”
We, thus, interpret the language of the amendment to mean, that in adding the words “or obtain a reproduction of any public record”, the Legislature was affording broader means of “reproducing” public records as well as affording greater discretion to custodians of public records, so that the furnishing by a custodian of a reproduction of a public record is compliance with the law, particularly in a case such as the present, where the requested mass reproduction by the applicant itself is or might be detrimental to the public interest because of possible loss or damage to the records and the imposition of additional *1109 burdens on the Clerk due to space limitations.
It is true, of course, that a statute of this kind must be liberally construed so as to extend rather than restrict, access to public records by the public. Webb v. City of Shreveport, 371 So.2d 316 (La.App. 2nd Cir.1979), writ denied 374 So.2d 657 (La.1979). Nevertheless, the right to examination and obtain copies is not absolute and unqualified; it must be determined in light of the circumstances. See Bartels v. Roussel, 303 So.2d 833 (La.App. 1st Cir.1974), Writ denied 307 So.2d 372 (La.1975).
In this perspective, it is appropriate for the courts to effectuate the basic purposes of the Public Records statute, which is to implement the inherent right of the public to be reasonably informed as to what public records contain and to the manner, basis and reasons upon which governmental affairs are conducted, Trahan v. Larivee, 365 So.2d 294 (La.App. 3rd Cir.1978), writ denied 366 So.2d 564 (La.1979), while at the same time balancing this right against the necessity for the custodian of public records to act in the public interest by protecting and preserving the public records against unreasonable dangers of loss or damage, or acts detrimental to the integrity of the public records.
We believe that the Public Records statute gives an individual the right to examine any public record and to copy or receive a copy thereof in a reasonable manner, subject to the reasonable exceptions under the law. Although one requesting a public record ordinarily may choose the manner in which the public record is to be copied, that right to choose is not absolute and unqualified, but must be balanced in each individual case against the duty of the custodian to safeguard the records. When it appears that the choice of the manner of copying presents a substantial risk of loss, or damage or alteration or danger to the integrity of the public records, the custodian of the public records, has the discretion, as well as the obligation, to prevent any impairment of the records in her safekeeping. If there could be no such reasonable control of the manner by which public records are obtained by an individual, then there would be no way by which the custodians of public records could effectively, and in an orderly manner, perform their legal duties to preserve the public records for the benefit of the public. We believe that the law clearly contemplates a reasonable regulation of the manner of obtaining public records.
For the reasons assigned, we affirm the judgment of the district court at the appellants’ costs.
AFFIRMED.
ON APPLICATION FOR REHEARING
PER CURIAM.
Appellant’s application for rehearing is based on the discovery of “new and persuasive” evidence regarding the legislative intent in amending LSA-R.S. 44:31. We must deny the application as the Court of Appeal has no jurisdiction to receive new evidence. LSA-Const. Art. 5, Section 10; LSA-C.C.P. art. 2132; Bullock v. Commercial Union Insurance Company, 397 So.2d 13 (La.App. 3d Cir.1981).